FURNITURE CAPITAL TRUCK LINES, INC., *v.* PUBLIC SERVICE COMMISSION.

1. CARRIERS—REHEARING—TRANSFER OF CONTRACT MOTOR CARRIER PERMIT.

Action of public service commission in granting a rehearing of its order authorizing the transfer of a contract motor carrier permit and then denying the transfer was within statutory authority conferred upon commission, where the transferor had made false representations as to facts relating to his establishment and suspension of the service thereunder and motion for rehearing had been timely filed (CL 1948, §§ 477.11, 479.18, 479.20; Public Service Commission Motor Carrier Rule No 34 [b]).

2. SAME—REVOCATION OF PERMITS—STATUTES.

The power of the public service commission to revoke contract motor carrier permits is derived exclusively from statute and strict compliance with the statutory procedure is required (CL 1948, § 479.18).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] Generally as to licensing of motor transportation, see 37 Am Jur, Motor Transportation § 71 *et seq.*

Generally as to revocation of licenses, see 33 Am Jur, Licenses § 99 *et seq.*

3. Same—Cancellation of Permit—Rehearing—Notice.
    The cancellation of a contract motor carrier permit on rehearing of an order authorizing its transfer was not valid, where the order granting the rehearing expressly indicated that matters in regard to the validity of the permit would not be considered and the 10-day statutory notice required of a hearing to revoke such a permit had not been given (CL 1948, § 479.18; Public Service Commission Motor Carrier Rule No 9).

4. Same—Revocation of Permit—Prejudice.
    Order of public service commission revoking a contract motor carrier permit, which was invalid because of failure to follow statutory procedure in respect thereto, is reversed without prejudice to commission's right to refuse a renewal of the permit or to institute appropriate revocation proceedings (CL 1948, § 479.18; Public Service Commission Motor Carrier Rule No 9).

5. Costs—Motor Carrier Permits—Transfer—Revocation.
    No costs are allowed in suit to set aside order of the public service commission as to denial of transfer of contract motor carrier permit and its revocation, where denial of transfer is affirmed and order of revocation is reversed without prejudice, neither party having prevailed in full.

Appeal from Ingham; Coash (Louis E.), J. Submitted April 14, 1954. (Docket No. 13, Calendar No. 45,906.) Decided July 6, 1954.

Bill by Furniture Capital Truck Lines, Inc., a Michigan corporation, and Sumner J. Gurney against Michigan Public Service Commission to establish right to motor carrier permit, the Commission having refused to transfer and having revoked the permit. Five motor freight carriers intervene as defendants. Bill dismissed. Plaintiffs appeal. Affirmed as to denial of right to transfer permit; reversed as to revocation of permit, without prejudice.

*Hayes, McEvoy & Carney* (*James McEvoy, Jr.,* and *Neil B. Hayes,* of counsel), for plaintiffs.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Robert A. Derengoski,* Assistant Attorney General, for defendant commission.

*Kit F. Clardy,* for defendant Consolidated Freight Company.

*Robert E. DesRoches,* for defendant Associated Truck Lines, Inc.

*William R. Hefferan,* for defendants Brada Cartage Company, Hess Cartage Company and Hogue Freight Lines, Inc.

BUTZEL, C. J.   Plaintiffs Furniture Capital Truck Lines, Inc., a Michigan corporation, and Sumner J. Gurney appeal from a decree of the circuit court for the county of Ingham, in chancery, dismissing their bill of complaint.   They had sought to have set aside an order of the Michigan Public Service Commission, defendant, referred to hereinafter as the commission, entered July 25, 1951, revoking and canceling its order of December 4, 1950, which authorized the transfer of contract carrier permit No. 18 to Furniture Capital Truck Lines, Inc., and subsequent transfers of portions of that permit to Abco Cartage Company and Hans Vroom Cartage Company, Inc. In addition to revoking the previous order, the order of July 25, 1951, revoked and canceled permit No. 18. The order of revocation and cancelation was made on a rehearing of the December 4, 1950, order sought on January 2, 1951, by Associated Truck Lines, Inc., Hess Cartage Company, Hogue Freight Lines, Inc., and Brada Freight Lines, Inc., intervening defend-

ants. Consolidated Freight Company was authorized to appear as intervening defendant by order of the circuit court of Ingham county.

Prior to February 20, 1945, one Clarence Pierce, d/b/a Border Cities Trucking Company, secured and held motor transport carrier permit No. 18 which gave him intrastate operating rights that included transportation of property for Great Lakes Steel Corporation between Ecorse, Michigan, and various points in Michigan, for Nash Kelvinator Corporation and Edgar's Sugar House between Detroit, Michigan, and Michigan points, and also for the American Box Board Company between Grand Rapids, Michigan, and various points in Michigan. Pierce became burdened by financial difficulties. He had had previous business relations with Gurney and some time prior to February 20, 1945, Gurney purchased Pierce's permit No. 18 for $6,000. The transfer of the permit was authorized by the commission February 20, 1945. The record indicates that Gurney bought only the permit and no equipment whatsoever. At the time of the purchase the country was involved in World War II and it was very difficult to obtain personnel and gasoline, tires and other essential equipment. On November 27, 1945, Gurney wrote to the commission stating that he had no mileage on his trucking operation since "June, 1945." The permit was renewed for 1946 and 1947 on renewal applications filed by Gurney. In the application for renewal for 1948, filed in November of 1947, the words "temporarily discontinued" were written on the face of the application. Following notice from Gurney dated April 9, 1948, that he had discontinued operations during the war years and had not yet resumed the same, the commission authorized the entry of an order on June 9, 1948, which stated:

"It is ordered that said application be and hereby is granted permission to temporarily discontinue service."

The last renewal application, as well as the preceding ones, contained the following sworn representation:

"(8) That the applicant is not in default of the payment of any of the fees required by law or any other provisions of law."

The transfer of permit No. 18 to the Furniture Capital Truck Lines, Inc., and also the partial transfers to Hans Vroom and Abco Cartage Companies were authorized by the commission on an application by Gurney which contained the following representation:

"Transferor represents that he has established service under said certificate or permit and has not abandoned or discontinued any service established thereunder, without the previous order of this commission authorizing same."

Gurney testified before the commission that he bought the permit in good faith in 1945 at a time when he believed that he had a competent person available to run the business; that some months later he found that he could not obtain the services of that person; that his investment of $6,000 for the permit without equipment was made entirely upon his belief that such person was available; that he made no effort to secure another person to take over the duties; and that when he found out that the person he had in mind was not available, he decided that he had not made a good deal and that the best thing to do was to dispose of the permit. While in 1945 both personnel and equipment were difficult to obtain because of war conditions, Gurney admitted that conditions changed and that in 1947 and 1948 both person-

nel and equipment were available but, having changed his mind about going into the trucking business, he was interested solely in disposing of the permit. Gurney stated that he might have asked more than $6,000, the amount of his original investment, but such was the net amount he eventually received, since $1,500 of the sale price was retained by the agent who arranged the sale.

The record is absolutely clear that from the date of Gurney's purchase in 1945 no trucks were ever operated under the permit. Its use had ceased completely and had been virtually abandoned except that efforts were made to keep it alive, in form, in the manner hereinbefore indicated. In the meantime the parties who would or could have had their freight transported under permit No. 18 continued in business and presumably used the facilities of other carriers for freight transportation. The record does not indicate it but it would be natural for them to increase their equipment to take care of the business that the holder of permit No. 18 was supposed to take care of. The president of Furniture Capital Truck Lines, Inc., testified that subsequent to the December 4, 1950, transfer his company had been successful in obtaining a portion of the steel transportation formerly performed by some of the intervening defendants.

The commission, after taking testimony and learning that Gurney had represented in his application for transfer that he had established service under the permit, found that Gurney had made a misrepresentation in his transfer application. The commission therefore revoked its order of December 4, 1950, authorizing the transfer of permit No. 18 and also revoked and canceled permit No. 18. The commission stated that the previous orders authorizing renewals and transfer of permit No. 18 were made upon *ex parte* hearings and based upon the repre-

sentations contained in the renewal and transfer applications and that such were not binding upon the commission when the true facts became known.

The granting of applications for renewal where there is no opposition appears to be more or less perfunctory. When a representative of the Furniture Capital Truck Lines, Inc., inquired in regard to the validity of permit No. 18, the commission's files showed that everything apparently was in proper order. A letter from the supervisor of the motor transport section to the commission reported that there was no apparent error in the file on the matter. This supervisor testified in the circuit court that he was reporting in regard to the mechanical aspects of the file and the procedure followed and not in regard to the merits or the substance of the matters involved in the petitions for transfer and rehearing of the order allowing the transfer. This employee of the commission testified that he had no actual knowledge of Gurney's operation and based his letter report upon the file in the case.

The first issue raised on appeal concerns the validity of the commission's action in revoking its order authorizing transfer of the permit by Gurney. Appellants contend that the findings of fact by the commission are contrary to the evidence and that the commission was in error in granting a rehearing of the order authorizing transfer of the permit upon the petition of the intervening defendants. Appellants cite *In re Application of Joe Brown & Sons,* 273 Mich 652, in claiming that the commission is without authority to correct its prior orders where the party relying upon such prior order would be injured by the correction.

The pertinent sections of the motor carrier act, PA 1933, No 254, as amended (CL 1948, § 475.1 *et seq.* [Stat Ann § 22.531 *et seq.*]), provide as follows:

"The commission may upon application of any person or any motor carrier, or upon its own motion, and upon at least 10 days' notice to the parties affected thereby, for good cause, and after an opportunity to be heard, revoke, suspend, alter, amend or modify any and all of its findings or orders; but no certificate or permit shall be amended, altered, modified, revoked, suspended, or impaired, except only after like notice and opportunity to be heard and upon clear proof of good, just, and sufficient cause. It shall have full power and authority to grant rehearings in all proceedings before it upon petition filed within the time allowed by law to bring proceedings for review." CL 1948, § 479.18 (Stat Ann § 22.-583).

"Any party to a cause before the commission under the terms of this act may within 30 days from the issuance of any order therein and notice thereof appeal therefrom by filing an action in the circuit court in chancery for the county of Ingham." CL 1948, § 479.20 (Stat Ann 1953 Cum Supp § 22.585).

Rule No 57 of the Motor Carrier Rules and Regulations promulgated by the Michigan Public Service Commission provides in part:

"The transfer described in any such application shall be approved if it appears from the application or any investigation thereof that the proposed transferee is fit, willing and able to perform the service authorized by the operating rights sought to be transferred, that the rights of claimants against the transferor have been considered in accordance with this rule, and that the provisions of Act 254 of the Public Acts of 1933, as amended, and the requirements of the rules and regulations of this commission promulgated thereunder have been complied with. Otherwise the application shall be denied."

The commission revoked its order of December 4, 1950, authorizing the transfer of the permit on the

grounds that the transferor had not complied with the statutory requirements and the rules and regulations of the commission in notifying the commission within 30 days of the cessation of operation under the permit. The applicable rule and statute provide:

"Every contract motor carrier of property or passengers who shall cease operation or abandon his rights under the permit issued shall notify the commission within 30 days of such cessation or abandonment." CL 1948, § 477.11 (Stat Ann § 22.558).

"Every contract carrier shall notify the commission in writing within 30 days of his discontinuance or abandonment of any part of his permitted contract operations giving his reasons therefor." Rule No 34(b), Motor Carrier Rules and Regulations.

In the application for transfer of the permit the transferee, Gurney, stated, as indicated hereinbefore, that he had established service under the permit and had not ceased or abandoned operation under the permit without previous authorization by the commission. In the notice of temporary discontinuance of service dated April 9, 1948, Gurney stated:

"Suspended operations during war years due to labor and equipment difficulties and have not yet resumed operations."

This representation is in contradiction to Gurney's testimony before the commission. He there stated:

"Sometime within the year after I acquired the rights I made up my mind that it was not a good deal and the best thing to do was to get rid of it."

The year referred to was 1946. It is evident that approximately 2 years before the notice of temporary discontinuance was sent to the commission, Gurney had made up his mind not to operate under the permit. It was not the equipment and labor difficulties during the war years and immediately

thereafter that dissuaded him from entering the trucking business but the failure to secure the desired managerial assistance, and the general uncertainties of the trucking business without such assistance, prompted his decision. Gurney in fact never established or commenced service under the permit and his representation as to the suspension of operation was a false representation of the facts.

The action of the commission in granting a rehearing of the December 4, 1950, order authorizing transfer of permit No. 18 upon petition of the intervening defendants was within the statutory authority set forth above. The petition for rehearing was filed January 2, 1951, within the 30-day period set forth by the statute. The finding of the commission that the transfer was authorized under misrepresentations by the transferee, Gurney, is fully supported by the record and is not contrary to the evidence. The commission with the facts thus disclosed could not consent to the transfer when it learned that the renewal of the permit had been obtained by false representations. Had it consented to the transfer it might be claimed that it was foreclosed from refusing to grant a renewal or from taking action to revoke the permit.

The *Brown Case, supra,* cited by appellants does not state a principle of law that prevented the commission from granting a rehearing of the December 4, 1950, order. The rehearing was sought within the 30-day statutory period. In the *Brown Case* the petition for rehearing was sought after the time for rehearing permitted by statute had expired. It was there held that the commission could grant rehearings only in conformity with the statutory provisions and that the rehearing granted in that case was not within the statutory authority of the commission.

The second issue raised on appeal concerns the validity of the commission's order in revoking per-

mit No. 18. Appellants assert that the action of the commission in revoking the permit was invalid in that the commission did not follow the statutory provisions in regard to procedure for revocation of permits. Rule No 9 of the Motor Carrier Rules and Regulations provides:

"Any certificate or permit shall be revocable if the carrier fails to begin the service permitted within 30 days from the date authorized by the commission, unless said carrier shall show good and sufficient cause why the service has not been initiated, or may be revoked, after hearing, on proof of violation of the statutes or rules and regulations of this commission adopted and issued thereunder."

The statute set forth above (CL 1948, § 479.18 [Stat Ann § 22.583]) provides, "but no certificate or permit shall be amended, altered, modified, revoked, suspended, or impaired, except only after like notice and opportunity to be heard." The notice referred to is the 10-day notice in the preceding part of the statute. The power of the commission to revoke permits is derived exclusively from the statute and strict compliance with the statutory procedure is required. In the order and opinion granting rehearing the commission stated:

"Other contentions raised by petitioners, such as the scope of authority contained in permit No. 18, and the validity of prior renewal orders, have not been considered by us since they are collateral to this proceeding and could only be raised by direct attack on the permit itself."

This statement of the commission negatived any intent to consider the validity of permit No. 18 and prior renewal orders. Rather than conforming to the statutory requirement of 10-day notice preceding commission action in revocation of permits, this statement of the commission expressly indicated that

matters in regard to the validity of the permit would not be considered. Without considering whether or not valid grounds existed for the revocation of the permit, it is clear that the failure of the commission to follow the statutory essentials in regard to notice preceding the hearing on revocation itself renders the commission's action in canceling permit No. 18 void. The notice required by the statute is notice of the action proposed to be taken by the commission; notice failing to inform the permittee of the purpose of the hearing, or notice expressly negativing intent to hear matters subsequently considered is not the notice required by the statute.

The order of the commission only as far as it revoked permit No. 18 is reversed without prejudice to the right of the commission to refuse a renewal of the permit or to institute appropriate proceedings to determine whether grounds exist for the revocation of permit No. 18. The order refusing consent to the transfer of the permit is affirmed. No costs are awarded, neither party having prevailed in full.

CARR, BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.