OLSON TRANSPORTATION COMPANY *v.*
PUBLIC SERVICE COMMISSION.

1. CARRIERS—PUBLIC SERVICE COMMISSION—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—RESTRICTIVE AMENDMENT—NOTICE. Plaintiff trucking company cannot complain of inadequacy of notice that its certificate of public convenience and necessity could be restrictively amended by public service commission in proceedings initiated on complaint of competing carriers relating to the transportation by plaintiff of petroleum products or other liquids in bulk in tank trucks, where commission had power under motor carrier act either to alter or revoke certificates of public convenience and necessity or enter cease and desist order directed against unauthorized practices and where pleadings of complainants and plaintiff revealed that the issue of grounds for restrictive amendment of the certificate had been framed and thus that plaintiff had actual notice in advance of hearings that such action could be taken (CL 1948, §§ 479.14, 479.18).

---

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 13 Am Jur 2d, Carriers §§ 95–97.
[5] 5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

2. Same—Certificate of Public Convenience and Necessity—Renewal Application—Effect.

> Application by plaintiff trucking company for late renewal of certificate of public convenience and necessity did not operate to grant it a new authorization from public service commission to carry petroleum products in bulk in tank trucks after such authority had lapsed by nonuser by plaintiff's transferor, since such late renewal applications are not regarded by the commission or the trucking industry as applications for new authority, are rarely contested, and are in effect *pro forma.*

3. Same—Public Service Commission—Certificate of Public Convenience and Necessity—Restrictive Amendment—Notice—Prejudice.

> Plaintiff trucking line must have acquired actual notice of the possibility of restrictive amendment of its certificate of public convenience and necessity during lengthy proceedings before the public service commission, on appeal to Ingham county circuit court, and on remand to commission, to have met the issue of such amendment before the commission; thus, plaintiff cannot claim prejudice resulting from failure of initial notice of hearing to specify the possibility of such amendment or possible revocation of the certificate (CLS 1961, § 479.20).

4. Same—Certificate of Public Convenience and Necessity—Amendment—Evidence.

> Public service commission was presented with clear proof of good, just, and sufficient cause to restrictively amend plaintiff's certificate of public convenience and necessity where evidence disclosed that plaintiff's transferor of authority from public service commission had originally been authorized to carry petroleum products and other liquids in bulk in tank trucks but had never owned such tank trucks and had never held itself out to the public as a carrier of such products, thus justifying commission finding that such authority had been lost by nonuser (CL 1948, §§ 479.14, 479.18).

5. Costs—Construction of Statute.

> No costs are awarded on appeal in action seeking reversal of public service commission order restrictively amending plaintiff's certificate of public convenience and necessity, the construction of a statute being involved.

Appeal from Court of Appeals, Division 2, Holbrook, P. J., and Fitzgerald and J. H. Gillis, JJ.,

affirming Ingham, Salmon (Marvin J.), J. Submitted December 3, 1968. (Calendar No. 20, Docket No. 51,918.) Decided December 27, 1968.

8 Mich App 421, reversed.

Complaint by Olson Transportation Company against the Public Service Commission seeking reversal of an order of the commission. Mercury Transit Company and Stang Tank Lines, Inc., intervened on behalf of defendant. Order reversed. Defendants appealed. U. S. Truck Company and Michigan Intra State Motor Tariff Bureau, Inc., intervened on appeal on behalf of plaintiff. Affirmed by Court of Appeals. Defendants appeal. Reversed.

*John M. Veale* (*Matheson, Dixon & Bieneman,* and *Stephens, Bieberstein, Cooper, Bruemmer & Gartzke,* of counsel), for plaintiff.

*John P. Boeschenstein,* for defendant Mercury Transit Company.

*Arthur Boynton,* for defendant Stang Tank Lines, Inc.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *David P. Van Note,* Assistant Attorney General, for defendant Public Service Commission.

O'HARA, J. The proceedings involved in this appeal originated in the Michigan public service commission.

By action of the commission after complaint by competing carriers, notice, and hearing, the commission restrictively amended appellee Olson Trans-

portation Company's certificate of public convenience and necessity to exclude therefrom the right to transport petroleum products in bulk in tank vehicles. The order further commanded appellee to cease and desist from the transportation of the excluded commodities. The order denied the complainant-appellants' prayer, made in the form of motion after the proceedings had begun, that appellee's intrastate certificate be revoked in its entirety.

From this order entered June 14, 1962, appellee appealed to the circuit court of Ingham county. Its bill of complaint contained a petition for an order restraining the commission during the pendency of the litigation from enforcing its order prohibiting the transportation of petroleum products in bulk by appellee. The court entered such order. The court took additional testimony and remanded the case to the commission. The commission reaffirmed its original position. Thereupon the case was once again before the circuit court. The court reversed and vacated the commission's original order of June 14, 1962. Appeal of right was taken to the Court of Appeals. That Court affirmed the circuit court. We granted leave to appeal.

The essence of the circuit court's holding was (1) the notice of hearing of the complaint was insufficient and (2) that assuming the adequacy of the notice, no good cause was established in the record to support the commission action restrictively amending appellee's certificates.

The court placed apparent emphasis upon whether the proceedings which led to the amendment of the certificate were conducted under article 5, § 18[1] or § 14[2] of the motor carrier act. Section 14 limits the

---

1 CL 1948, § 479.18 (Stat Ann § 22.583).
2 CL 1948, § 479.14 (Stat Ann § 22.579).

power of the commission in proceedings taken there-under to the issuance of an order to cease and desist from the violative practice.   Section 18 authorizes the commission for "good cause" after an opportunity to be heard to "revoke, suspend, alter, amend or modify" any of its previous orders, and after "like notice" and upon "clear proof of good, just and sufficient cause" to revoke, suspend, alter, amend or modify any certificate or permit issued by it.   The Court of Appeals did not reach the question of the merits of the commission's action in amending the certificate.   It based its order solely on the inadequacy of notice to proceed under section 18.

The commission, in its answer to appellee's bill of complaint in the circuit court, contended that there is no significant difference between its jurisdiction under either section as it applies to the case at bar for the reason that under section 14 it could, upon a proper evidentiary base, order appellee to cease and desist from the transportation of petroleum products in bulk in tank vehicles, and under section 18 it could amend appellee's certificate to exclude from it the right to do the same thing.

The record discloses that the commission did both. In subparagraph (2) of its orders of June 14, 1962, it amended the certificate restrictively to "exclude the transportation of petroleum products in bulk in tank vehicles."   In paragraph (3) it ordered appellee to "cease and desist from the transportation of petroleum products in bulk in tank vehicles."

We think the essential notice question is the prejudice, if any, that appellee suffered as a result of the nature of the notice it received.   The notice recited:

"On September 30, 1960, an application for investigation of certain operations of Olson Transporta-

tion Company was filed by Mercury Transit Company.

"On October 14, 1960, a copy of the application was served on Olson Transportation Company and a reply has been made thereto.   *   *   *

"It is hereby ordered, that investigation and hearing in this matter will be held in the offices of the commission at Lansing, Michigan at 10 a.m., March 21, 22, and 23, 1961.

"At such time all interested parties shall have the opportunity of presenting such evidence, testimony and argument as they may deem necessary for a determination by the commission in this matter.

"Michigan Public Service Commission
"(s) Norman Berkowitz
Secretary

"sd
"Dated: February 10, 1961"

The complaint by Mercury Transit Company is composed of 15 paragraphs. Paragraph 13 thereof alleges:

"Any right to transport petroleum products, in bulk, in tank vehicles under the authority described in paragraph 5 of this complaint should be eliminated."

In its reply to that paragraph appellee Olson Transportation Company answered:

"Without admitting the facts alleged, Olson denies the legal conclusion alleged in paragraph 13, particularly the conclusion that the mere failure to physically move one of several hundred authorized commodities, if such occurred, *constitutes a statutory ground for the revocation or restriction of a certificate authorizing the transportation of general commodities.*" (Emphasis supplied.)

We find it very difficult to reconcile appellee's claim that it was unaware that its certificate might

be revoked or restricted when it affirmatively asserted that the reasons alleged by appellant for the elimination of the transportation of petroleum products in bulk in tank vehicles did not constitute a "statutory ground for revocation or restriction." It would seem that this issue was clearly framed by the complaint and answer. A review of the transcript of the testimony adduced in the commission hearings shows it to have been concerned with this issue, namely, the right of appellee to perform the transportation of petroleum products in bulk in tank vehicles. It was the position of appellants Mercury Transit Company and Stang Tank Lines which had intervened at the commission hearings that appellee's intrastate authority acquired by transfer pursuant to required commission approval from L & L Trucking Service did not include the right of bulk petroleum transportation, and that the transferee Olson could acquire no greater rights than had been enjoyed by the transferor.[3]

On the question of prejudice of the appellee Olson by reason of the nature of the notice, it should be noted that after the adverse decision by the commission, appellee had the right under the statute to seek rehearing before the commission. Section 20

---

[3] We are not unmindful of the contention that because the transferee-appellee here failed to file its annual renewal application timely, that a "new" certificate came into existence free from any infirmity that may have attached to that of the transferor. We reject it for the reasons detailed in the testimony of the long-time and highly regarded director of transportation of the commission. He distinguished between "Original Applications" and applications which although in a technical sense are "original" are in reality and recognized by the commission, motor transportation practitioners and the industry as "Late Renewals." They are so designated in the commission bulletin which publishes notice of all docketed proceedings before the commission. He testified that they are in effect *pro forma* and generally not opposed. The application to be so docketed must be confined to the routes and commodities that appeared in the certificate which was not filed in time for automatic annual reissuance.

of article 5 of the motor carrier act[4] also provides that on appeal of a commission order to the circuit court of Ingham county evidence may be introduced which if found by the court to be different from that offered upon hearing before the commission, or additional thereto, the court shall transmit the record back to the commission for reconsideration. We cannot but conclude that if, *arguendo,* appellee received a notice which by its express terms did not advise the company originally that its certificate might be restrictively amended after hearing, it must have had actual notice thereof in ample time to have met the issue at commission level. Hearings were held and testimony taken in March of 1961. They were concluded in June of 1961 when a deposition was added to the record. Thereafter proceedings were held, testimony taken and evidence received in the circuit court and the record was transmitted to the commission for reconsideration. With all these opportunities available to meet the issue of possible restrictive amendment or revocation, we can find no indication that appellee was prejudiced in any manner by the notice it received. We hold that appellee had adequate notice that its right to transport petroleum products in bulk in tank vehicles was in question and would be included in the investigation by the commission.

Appellee, the circuit court, and the Court of Appeals cite and rely upon *Furniture Capital Truck Lines, Inc.,* v. *Public Service Commission* (1954), 340 Mich 173. We do not find the case controlling. In that case the commission granted a rehearing on an application for *transfer* of a permit. On the rehearing the commission did not limit itself to the issue of the validity of the transfer previously approved but rather revoked the permit involved. This Court

---

[4] CLS 1961, § 479.20 (Stat Ann 1968 Cum Supp § 22.585).

held such action did not fall within the scope of the hearing notice. We agree. Obviously it did not. A rehearing upon an application to transfer a certificate or permit is a far cry from a hearing on complaint and investigation which expressly alludes to the elimination of certain specified commodities from a certificate or permit.

Having held that the notice to the appellee was adequate and in conformance with the purpose and intent of the statute, we pass to the second question, namely, whether "clear proof of good, just and sufficient cause" for restrictively amending appellee's certificate was established in the initial hearing before the commission and in the circuit court before retransmittal of the case to the commission for further consideration.

The key finding of the commission is found in its order of June 14, 1962:

"We therefore find that at the time of transfer L & L had no authority to transport petroleum products in bulk intrastate. It is axiomatic that the transferor could transfer no greater authority to the transferee than was held by the transferor prior to the transfer."

It is important to note that the commission did not find in support of the foregoing conclusion that L & L at no time ever had, under its general commodity certificate, the right to transport petroleum products in bulk in tank trucks. In fact, it found the converse thereof:

"It is clear that the transportation of petroleum in bulk tank vehicle did not develop to any large extent until some time subsequent to the enactment of the motor carrier act. It seems apparent to us that if during this early period of development L & L had chosen to hold itself forth to the public as being ready, willing and able to perform this type of serv-

ice, it would have been free to do so. It is therefore
our opinion that during this period L & L did have
authority to transport petroleum in bulk had it avail-
ed itself of the opportunity to do so at that time. We
will comment as to its failure to do so in a subse-
quent portion of this order. *  *  *

"The record clearly indicates that L & L never
performed such service, did not solicit such business,
had no equipment available with which to render
such service and had no tariffs on file which might be
reasonably interpreted as being pertinent to this
type of transportation. The record clearly indi-
cates that L & L was never considered by itself, by
this commission, or by carriers of petroleum prod-
ucts in bulk as being competitive in this field. The
evidence clearly shows that L & L never dedicated
any of its property or equipment to this type of serv-
ice and never made expenditures or investment of
any kind in equipment or facilities to handle such
traffic. *  *  *

"The entire record in this case clearly shows that
L & L never made any effort to discharge its duty to
render such service to the public. It is clear there-
fore that any authority to transport products in
bulk which might have been held by L & L in the
past was lost by nonuser prior to the transfer of
such authority to Olson."

The foregoing findings are, of course, conclusion-
ary in nature. It would have lightened the task of
judicial review had the specific testimony or other
evidence relied on by the commission to support its
conclusions been incorporated in its opinion and
order.

We quote from the testimony[5] of Grover Lewis,
one of the partners in L & L, which supports this
finding:

---

5 Taken in deposition form.

*Direct Examination*

"*Q.* Did you operate it [L & L Trucking Service] continuously from 1928 until the fall of 1957?

"*A.* Until January 1, 1958, yes, sir.

"*Q.* Your contract with Olson was dated late in 1957, your contract to sell to Olson?

"*A.* Yes, somewhere along in September or October or the early part of the fall of 1957.   *   *   *

"*Q.* Did you ever own any tank truck equipment as it is known in the petroleum industry?

"*A.* As tankers no."   *   *   *

*Cross Examination*

*   *   *

"*Q.* I take it from your testimony that L & L never owned any tank vehicles?

"*A.* No.

"*Q.* Never leased any tank vehicles?

"*A.* No.

"*Q.* Never operated any tank vehicles?

"*A.* No.

"*Q.* Never registered any with the Michigan Public Service Commission?

"*A.* No.

"*Q.* Did you ever oppose any tank carrier's applications in this area?

"*A.* No, sir.

"*Q.* Did any tank carriers ever come in and oppose your applications?

"*A.* Not that I know."

The commission made a further finding that:

"The record reveals that L & L actually excluded from its holding out to the public any service involving the transportation of liquids in bulk in tank vehicles. L & L was a party to the Upper Peninsula Carriers Association tariff. That tariff contains no rate for the transportation of liquids in bulk in tank vehicles."

Reference to the record made before the commission shows the following testimony by Vincent Lewis who described himself as "assistant to my father [Grover Lewis]." On direct examination the following questions and answers appear:

"*Q.* Do you recognize MPSC No. 1 entitled, 'Upper Michigan Permitted Carriers Association, G. R. Bailey, Agent, as the Upper Michigan Permitted Carriers Association Tariff' to which L & L was a party?

"*A.* Yes, I do.

"*Q.* Calling your attention to item No. 62 of the tariff, under the heading of, 'Special Handling' I ask you to listen then, and answer my question. Under the heading 'Special Handling' and I quote from page 8 of that tariff, 'When any article or shipment requiring special equipment and/or additional labor for loading, hauling, or unloading is tendered for transportation, such special equipment and/or additional labor must be furnished or arranged for by the consignee or consignor.' Are you familiar with that rule?

"*A.* Yes, sir."

As we read the record in summary L & L Trucking Service operated from 1928 to 1957. This period includes operations both before and after the adoption of the Michigan motor carrier act which required a certificate or permit issued by the Michigan public service commission to continue to transport for hire. At no time before or after the passage of the act did appellee ever own, lease, or register with the Michigan public service commission tank vehicles. It never transported any petroleum products or other liquids in bulk in tank trucks. It was a party to a tariff which required the consignor or consignee to furnish any special equipment needed for the transportation of liquids in bulk. Its authority (all but for household goods) was

transferred by sale to Olson Transportation Company. Some time after such transfer, the transferee initiated the transportation of petroleum products in bulk in tank vehicles. Competing carriers complained to the regulatory body legislatively empowered to supervise motor transportation for hire. They sought to have any authority to transport petroleum products in bulk in tank vehicles eliminated from the transferred certificate. The commission served a copy of the complaint on the transferee. A hearing was held. A record was made. The commission found the authority in question had lapsed by nonuser and by failure of L & L to hold itself out to the public to perform the service. The performance of the particular service was excluded by the tariff, except upon special arrangement and payment therefor by the consignor or consignee. The commission restrictively amended the certificate to eliminate transportation of the disputed commodities. It ordered the carrier to cease and desist from the transportation thereof.

On such a record we cannot say that there was not before the commission clear proof of good, just and sufficient cause to amend the certificate. Nor can we say that the commission on the record was without jurisdiction to order appellee to cease and desist from the operation complained of. The judgment of the Court of Appeals is reversed. That portion of the order of the circuit court of Ingham county which was not passed on by the Court of Appeals is vacated and set aside. The order of the Michigan public service commission of June 14, 1962, is affirmed. The opinion and order on remand of the Michigan public service commission of January 16, 1964, to the extent it is here involved, is likewise affirmed.

No costs, the construction of a statute being involved.

Dethmers, C. J., and Kelly, Black, Adams, and T. E. Brennan, JJ., concurred with O'Hara, J.

T. M. Kavanagh, J., concurred in result.